James C. Tecce
Eric S. Kay
Daniel Holzman
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010

*Counsel to Plaintiffs*

<div style="float:right">

<u>**Objections Due**</u>:  **June 19, 2017 at 4:00 p.m.**
<u>**Hearing Date**</u>:  **June 27, 2017 at 10 a.m.**

</div>

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| DPH HOLDINGS CORP., et al., | Case No. 05-44481 (RDD) |
| Reorganized Debtors. | (Jointly Administered) |
| SOLUS ALTERNATIVE ASSET MANAGEMENT LP, ANGELO GORDON & CO, L.P., LONGHORN CREDIT FUNDING, LLC, NEXPOINT CREDIT STRATEGIES FUND, GOV RE, LTD., ULTRA MASTER LTD, SOLA LTD, SOLUS OPPORTUNITIES FUND 1 LP, SOLUS OPPORTUNITIES FUND 2 LP, SOLUS RECOVERY FUND III MASTER LP, AG SUPER FUND INTERNATIONAL PARTNERS, L.P., and BOTTICELLI LLC, | Adversary No. 14-02445 (RDD) |
| Plaintiffs, | **PLAINTIFFS' MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 1142(b), FOR APPROVAL OF STIPULATION AND ORDER, PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(ii), VACATING FINAL JUDGMENT AND DISMISSING ADVERSARY PROCEEDING WITH PREJUDICE** |
| vs. | |
| DELPHI AUTOMOTIVE PLC and DELPHI AUTOMOTIVE LLP, | |
| Defendants, | |
| and | |
| DPH HOLDINGS CORP., | |
| Nominal Defendant. | |

Plaintiffs[1] in the above-captioned proceeding hereby move (hereinafter, the "Motion"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), for approval of the Settlement Stipulation attached hereto as **Exhibit A** and in support thereof respectfully represent as follows.

### PRELIMINARY STATEMENT

1.      Plaintiffs initiated this Proceeding to compel Defendants to make the General Unsecured MDA Distribution required of the Company Buyer under the Plan.  It has involved extensive motion practice, discovery, two rounds of summary judgment briefing, and several oral arguments before the Court.  The Court has issued two decisions:  the first finding that certain equity redemptions count toward the $7.2 billion threshold trigger under the Plan (making the $300 million General Unsecured MDA Distribution payable) and the second awarding Plaintiffs prejudgment interest totaling $27 million.  Defendants sought reconsideration of the first decision and also filed an appeal from that decision.

2.      Plaintiffs and Defendants have resolved their disputes pursuant to an agreement that contemplates payments totaling $310 million.  See ¶¶ 1-2, 13.[2]  While the Settlement Stipulation involves only the Parties and governs their respective rights and obligations, it also facilitates distributions of the General Unsecured MDA Distribution to all holders of Allowed General Unsecured Claims.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation And Order, Pursuant To Fed. R. Civ. P. 41(a)(1)(A)(ii), Vacating Final Judgment And Dismissing Adversary Proceeding With Prejudice annexed hereto as **Exhibit A** (the "Settlement Stipulation").

[2]      A portion of the $310 million ($2.8 million) will be used to satisfy Plaintiffs' attorneys' fees and the balance ($307.2 million) will be distributed to holders of Allowed General Unsecured Claims.

3.      The Plan did not specifically address undelivered or unclaimed General Unsecured MDA Distributions.  Accordingly, the Settlement Stipulation provides for the redistribution of funds that cannot otherwise be delivered to Record Holders[3] because those unsecured creditors cannot be located, their distributions are returned, or they fail to provide a taxpayer identification number within a six month period after the initial distribution is made. After six months, the unsecured claims of the Unknown Claimants will be barred forever, and their undelivered funds will be redistributed ratably among Record Holders who can be located. See ¶ 8.  Since the Settlement Stipulation effects distributions to unsecured creditors under the Plan and potentially impacts third parties, notice of the Motion is being served on holders of allowed claims listed in the final claims register and entities listed in the most recent version of the master service list.

4.      The Settlement Stipulation is the product of a good faith, arms-length negotiation between the Parties and avoids protracted and expensive litigation on reasonable terms. Accordingly, the Parties request that the Court approve the Settlement Stipulation.

## BACKGROUND

### A.    ADVERSARY PROCEEDING

5.      On or about March 17, 2015, Plaintiffs filed their First Amended Complaint For Declaratory Relief And Breach Of Contract [Adv. Proc. ECF No. 20], seeking payment of the General Unsecured MDA Distribution.

---

[3]    "Record Holders" means holders of Allowed General Unsecured Claims who were record holders stated in the final claims register of the Chapter 11 Cases as of the Claims Record Date (as defined in the Plan). See ¶ 7.

6.      On or about November 23, 2016, Plaintiffs filed their Summary Judgment Motion [see Adv. Proc. ECF Nos. 75, 76-80, 89, 90, 96-97], and Defendants filed their Summary Judgment Motion [see Adv. Proc. ECF Nos. 81-85, 91-93, 98-99].

7.      Plaintiffs requested prejudgment interest in their Summary Judgment Motion and in post-hearing memoranda.  [See Adv. Proc. ECF Nos. 116-117, 123].  Defendants opposed that request in their Summary Judgment Motion and their post-hearing memoranda.  [See Adv. Proc. ECF Nos. 115, 121, 122].

8.      The Court heard oral argument with respect to the Cross Motions on January 12, 2017 (the "January Hearing") and oral argument with respect to the Prejudgment Interest Briefing on March 24, 2017 (the "March Hearing").

9.      The Court announced its preliminary decision with respect to the Cross Motions at the January Hearing and its preliminary decision with respect to the Prejudgment Interest Briefing at the March Hearing.  The Court, among other things, granted Plaintiffs' Summary Judgment Motion and partially granted their request for prejudgment interest, denied Defendants' Summary Judgment Motion, and directed that Defendants make the General Unsecured MDA Distribution to holders of Allowed General Unsecured Claims together with prejudgment interest (collectively, the "Preliminary Bench Decisions").

10.     On January 26, 2017, Defendants filed their Notice Of Appeal And Statement Of Election [Adv. Proc. ECF No. 105] from the Preliminary Bench Decisions (the "Appeal").

11.     The Appeal currently is pending before the United States District Court for the Southern District of New York (the "District Court") (Case No. 17 Civ. 00650 (CM)).

12.     On February 2, 2017, Defendants filed their Motion For Reconsideration Pursuant To Local Bankruptcy Rule 9023-1 [Adv. Proc. ECF No. 108] (the "Reconsideration Motion"), seeking reconsideration of the Court's decision announced at the January Hearing.

13.     At the March Hearing, the Court instructed Plaintiffs to submit a proposed form of judgment and indicated it would endeavor to provide a written opinion supplementing the Preliminary Bench Decisions in May 2017.

14.     On April 26, 2017, the Court entered the Final Judgment which, among other things, directs Defendants to pay holders of Allowed General Unsecured Claims (a) the General Unsecured MDA Distribution ($300,000,000); (b) Prejudgment Interest (totaling at least $27,171,233 as of April 10, 2017); and (c) Post-Judgment Interest.

**B.     SETTLEMENT STIPULATION**

15.     After the Court entered the Final Judgment, the Parties negotiated the Settlement Stipulation.  It resolves their disputes concerning the Preliminary Bench Decisions and forthcoming written opinion, Final Judgement, Appeal, Reconsideration Motion, and claims that could have been asserted in connection with payment of the General Unsecured MDA Distribution under the Plan.

16.     Under the Settlement Stipulation, Plaintiffs will (a) deposit the General Unsecured MDA Distribution (i.e., $300,000,000) and the sum of $7,200,000 (collectively, the "Settlement Payment") into the Disbursement Account and (b) pay $2,800,000 to Plaintiffs in respect of their attorneys' fees and costs.  See ¶¶ 1-2.  The Final Judgment will be vacated automatically on the Funding Date.  See ¶ 13.

17.     The Settlement Stipulation provides that (a) it will be effective immediately upon its approval by the Court and (b) in the absence of a timely filed Objection, it will be treated

4

immediately as a final order for purposes of making distributions. See ¶¶ 3-4. See also In re

Ray, 597 F.3d 871, 874 (7th Cir. 2010) ("Only a person aggrieved has standing to appeal an order

of the bankruptcy court.  Prerequisites for being a person aggrieved are attendance and objection

at a bankruptcy court proceeding.") (citing, inter alia, In re Commercial W. Fin. Corp., 761 F.2d

1329, 1334-35 (9th Cir. 1985); In re Weston, 18 F.3d 860, 864 (10th Cir. 1994)).

18.    The Disbursement Agent engaged by Defendants will (a) within 15 days after the

Funding Date, mail checks to holders of Allowed General Unsecured Claims who were Record

Holders in the amounts of their respective Pro Rata shares of the Settlement Payment if their

taxpayer identification number is known and (b) if the taxpayer identification number is not

known, within 15 days after the Funding Date send that Record Holder a request for its taxpayer

identification number (and send the distribution within 15 days of receiving that information).

See ¶ 7.

19.    In addition, the Settlement Stipulation provides for the redistribution of any

portion of the Settlement Payment that either (a) is returned as undeliverable to a Record Holder,

(b) cannot be delivered because the Defendants or the Disbursement Agent cannot locate the

Record Holder, or (c) cannot be delivered because the Record Holder has not provided its

taxpayer identification number to the Disbursement Agent (clauses (a), (b), and (c) each shall be

an "Undelivered Payment," and the holder of such a claim, an "Unknown Claimant").  No

further distribution of the Settlement Payment will be made to an Unknown Claimant unless

within six months of the Funding Date, the Unknown Claimant is located, the Unknown

Claimant provides its taxpayer identification number, or the Disbursement Agent is notified of its

current address.  See ¶ 8.

20.    During the six-month period following the Funding Date, the Disbursement Agent will use its reasonable efforts to locate the Unknown Claimants.  If at the end of the six-month period, any Undelivered Payments have not been distributed, then on the date that is six months following the Funding Date (a) the Unknown Claimants' rights and claims to such Undelivered Payment shall be discharged and forever barred, and (b) the Disbursement Agent will distribute promptly such Undelivered Payments Pro Rata among those Record Holders who are not Unknown Claimants (the "Undelivered Distribution Recipients") free of any restrictions thereon.

21.    The Settlement Stipulation provides for mutual releases.  Also, Plaintiffs provide a limited indemnity in favor of Defendants and the Disbursement Agent with respect to claims asserted by Unknown Claimants or the GM Entities with respect to the Undelivered Payments. The indemnity is limited in time (to 18 months from the Funding Date) and amount (to the Undelivered Payments actually received by Plaintiffs).  See ¶ 9.

22.    The Settlement Stipulation provides that Defendants' obligations under the Plan, the MDA, and the Company Buyer Agreement are deemed satisfied and that Plaintiffs shall not be deemed to have undertaken any duty or obligations with respect to holders of General Unsecured Claims as a result of this Proceeding or the settlement.  See ¶¶ 10-11.

## BASIS FOR RELIEF

23.    The statutory predicates for the relief requested in the Motion are sections 105(a) and 1142(b) of the Bankruptcy Code.  The Court has jurisdiction over the Motion pursuant to sections 157(b) and 1334 of title 28 and the Plan.

## ARGUMENT

24.    Section 1142(b) of the Bankruptcy Code empowers the Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to

perform any other act … that is necessary for the consummation of the plan." 11 U.S.C. §

1142(b).  Section 105(a) of the Bankruptcy Code provides "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a).

25.     The Settlement Stipulation resolves a dispute concerning the General Unsecured

MDA Distribution marked by highly complex issues that have been litigated extensively.  While,

at its core, this is a two-party dispute, myriad holders of Allowed General Unsecured Claims are

beneficiaries of the Settlement Stipulation because resolution of the dispute results in

distributions to all holders of those claims finally being made under the Plan.  Instead of a

protracted appellate process that might or might not result in distributions, the Settlement

Stipulation enables all holders of Allowed General Unsecured Claims to receive the General

Unsecured MDA Distribution with certainty, now, nearly eight years after the Plan was

confirmed.

A.     **REDISTRIBUTION MECHANIC IS TYPICAL
FEATURE OF SO-CALLED "POT PLANS"**

26.     The redistribution mechanic in the Settlement Stipulation is a typical feature of

chapter 11 plans that provide for a finite amount of consideration to unsecured creditors.  Plans

routinely provide for the redistribution of undelivered distributions among known creditors. See,

e.g., In re Nortel Networks, Inc., et al., No. 09-10138 (KG) (Bankr. D. Del. Jan. 24, 2017) [ECF

No. 17795-1] (Chapter 11 Plan at 60 (§ 10.9)) (providing for redistribution of unclaimed

distributions among holders of allowed claims); In re ZCO Liquidating Corporation (f/k/a OCZ

Technology Group, Inc.), et al., No. 13-13126 (PJW) (Bankr. D. Del. June 11, 2014) [ECF No.

542] (Chapter 11 Plan at 11 (§ 3.7)) (providing for redistribution of unclaimed distributions

among unsecured creditors); In re Dynegy Holdings LLC, et al., No. 11-38111 (CGM) (Bankr.

7

S.D.N.Y. Mar. 18, 2013) [ECF No. 1340] (Chapter 11 Plan at 12-13 (§ 5.3)) (providing for

redistribution of unclaimed distributions among unsecured creditors); <u>In re Lehman Bros.</u>

<u>Holdings, Inc., et al.</u>, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 6, 2011) [ECF No. 23023-1]

(Chapter 11 Plan at 76 (§ 8.7)) (providing for redistribution of unclaimed property among

holders of allowed claims).

28.    With respect to the treatment of Undelivered Payments, the Settlement Stipulation

contains several protections for Unknown Claimants.  Defendants have engaged an experienced

Disbursement Agent (KCC) to ensure that the Settlement Payment is efficiently and timely

distributed among Record Holders.  The Settlement Stipulation requires the Disbursement Agent

to use its reasonable efforts for six months to locate Unknown Claimants.  It is only after that

process is complete that the Undelivered Payments will be distributed ratably to the Undelivered

Distribution Recipients.  Moreover, notice of this Settlement Stipulation has been given to

Record Holders through the filing of the Motion and its service on Record Holders and parties

that appeared on the master service list in the Chapter 11 Cases.[4]

**B.    UNSECURED CREDITORS ARE ONLY PARTIES WITH
A RESIDUAL INTEREST IN UNDELIVERED PAYMENTS**

28.    Holders of Allowed General Unsecured Claims are the only parties that have a

residual interest in the Undelivered Payments.  No other party has such a residual interest,

including the Company Buyer and DPH Holdings Corp., the reorganized debtor that made Plan

---

[4]    Plaintiffs and Defendants reserve any and all rights, claims, and defenses with respect to any objection to
the Motion, including, without limitation, the defense that the objecting entity lacks standing to assert an
objection. Nothing in the Motion, the Settlement Stipulation, or any other document filed or statement
made in this proceeding shall be deemed to constitute an admission that any entity has standing in this
proceeding generally or with respect to the Motion, the Settlement Stipulation, or its objection specifically.

distributions to other creditors and that appears to have been finally dissolved in December 2016

("DPH").

29.    Similarly, the GM Entities do not have an interest in the Undelivered Payments

under the Plan, the MDA, or any other Plan-related documents.

30.    The Plan does not contain a provision applicable to undelivered distributions as

they relate to the General Unsecured MDA Distribution.  For that reason, the beneficiaries of the

General Unsecured MDA Distribution, i.e., the holders of Allowed General Unsecured Claims,

are the only parties entitled to share in residual, unclaimed payments.

31.    Specifically, section 9.7 of the Plan (Undeliverable Distributions)[5] by its own

terms is inapplicable to the General Unsecured MDA Distribution.  Section 9.7(b) applies when

distributions are undeliverable after the later of (i) the first anniversary of the effective date of

the Plan and (ii) six months after such holder's Claim becomes an Allowed Claim.  Clause (i) is

inapplicable because it addresses distributions made within one year of the Plan's effective date.

Neither the Plan nor the MDA contain any timetable for making the General Unsecured MDA

Distribution.  Here, the Undelivered Payments, which are a component of the General Unsecured

MDA Distribution, will be made eight years after the Plan's effective date.  Clause (ii) is

inapplicable because the holders' General Unsecured Claims became Allowed Claims under the

---

[5]    See Plan [Adv. Proc. ECF No. 78-4] at 55 (§ 9.7(b)) ("If any distribution to a holder of a Claim is returned
as undeliverable, no further distributions to such holder of such Claim shall be made unless and until the
Disbursing Agent or the appropriate Servicer is notified of the then-current address of such holder of the
Claim, at which time all missed distributions shall be made to such holder of the Claim without interest.
Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such
distributions are claimed.  The Reorganized Debtors shall make reasonable efforts to locate holders of
undeliverable distributions.  All claims for undeliverable distributions must be made on or before the later
to occur of (i) the first anniversary of the Effective Date or (ii) six months after such holder's Claim
becomes an Allowed Claim, after which date all unclaimed property shall revert to the Reorganized
Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect
to such property shall be discharged and forever barred, notwithstanding federal or state escheat laws to the
contrary.").

9

Plan years ago.  The inapplicability of these two clauses confirms section 9.7 of the Plan does

not govern undelivered distributions as they relate to the General Unsecured MDA Distribution.

32.    Moreover, absent an agreement to the contrary, the Company Buyer would be the

beneficial owner of the any unclaimed portion of the General Unsecured MDA Distribution

pursuant to section 347(b) of the Bankruptcy Code.[6]  That section applies to purchasers of a

liquidating debtor's assets and provides that unclaimed property of the liquidating debtor reverts

to the purchaser of its assets, here the Company Buyer.  Indeed, the Plan (a) requires that the

Company Buyer—not DPH—fund the General Unsecured MDA Distribution with the Company

Buyer's property and (b) appoints the Company Buyer as the Disbursing Agent for purposes of

the General Unsecured MDA Distribution.[7]  And, even though it is the Company Buyer's

property that is being distributed, the Company Buyer nonetheless waived any interest in the

Undelivered Payments under the Settlement Stipulation and agreed to allow those amounts to be

redistributed to the known claimants.

---

[6]    See 11 U.S.C. § 347(b) ("Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under … [chapter 11] … for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section … 1129 … becomes property of the debtor or the entity acquiring the assets of the debtor under the plan, as the case may be."); In re Future Trust, Inc., 387 B.R. 574, 578 (8th Cir. B.A.P. 2008) (noting section 347(b) and 1143 of Bankruptcy Code "are akin to a statute of limitations and are designed to provide finality and judicial economy to avoid disruptive, wasteful litigation over unclaimed funds").

[7]    See Plan [Adv. Proc. ECF No. 78-4] at 12 (§ 1.78 (defining "Disbursing Agent" to mean "Reorganized DPH Holdings, or any Person designated by it, in its sole discretion, to serve as a disbursing agent under this Plan.  For purposes of distributions to holders of Allowed General Unsecured Claims, Reorganized DIP [sic] Holdings shall as of the Effective Date appoint DIP Holdco 3, LLC as the Disbursing Agent, or such other party as may be determined by mutual agreement between Reorganized DIP [sic] Holdings and DIP Holdco 3, LLC.")), 33 (§ 5.3 ("On the Effective Date, the Disbursing Agent shall establish a distribution account to hold the proceeds, if any, of the General Unsecured MDA Distribution"), at 42 (§ 7.15 ("On the Effective Date, the Disbursing Agent shall establish a distribution account on behalf of holders of General Unsecured Claims for the purpose of holding the General Unsecured MDA Distribution")), and 53 (§ 9.3 ("The Disbursing Agent shall make all distributions required under this Plan")); MDA § 3.2.3 ("To the extent payable following the Closing, the Company Buyer shall pay to a disbursement agent such amounts payable to the unsecured creditors of Delphi … which payment to such disbursement agent shall be made only if the transactions contemplated hereby are consummated pursuant to a Plan of Reorganization").

### C.    REDISTRIBUTION MECHANIC IS A CRITICAL SETTLEMENT FEATURE

33.    Ultimately, the ratable distribution of the Settlement Payment (i.e., $307,200,000) to all holders of Allowed General Unsecured Claims is only one component of the consideration provided under the Settlement Stipulation.  Another important component consists of the ability of the Undelivered Distribution Recipients to share, ratably, in any Undelivered Payments.  This is an essential feature of the Parties' agreement that should be approved by the Court.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court to grant the Motion and approve and SO-ORDER the Settlement Stipulation.

Dated:  June 5, 2017
       New York, New York

       Respectfully submitted,

       QUINN EMANUEL URQUHART &
       SULLIVAN, LLP

By:    /s/ JAMES C. TECCE
       James C. Tecce
       Eric S. Kay
       Daniel Holzman
       51 Madison Avenue, 22nd Floor
       New York, New York  10010-1601
       Telephone:  (212) 849 7000

       *Counsel to Plaintiffs*